Harper, Ch.
By the will of Philip Naisor, deceased, all his residuary estate was directed to be divided among his grandchildren, children of his son, Frederic Naisor, and his daughter, Mary M. Broekaway, when the youngest should attain the age of eighteen years. But, if either of the said grandchildren should die unmarried, under the age of twenty-one years, the share of him or her so dying, was given to the survivors. Philip Naisor Broekaway was one of these grandchildren, the son of Mary M. Broekaway. According to the testimony, he was born in May or June of 1799 or 1800, and left Charleston in the summer of 1813 or 1814. He was heard of, as residing in New-York, some six months- after his leaving Charleston, since which time, nothing has been heard of him. The present bill was filed by the grandchildren, for distribution of the estate; which was made with respect to the whole of the estate except the share which it was supposed might be claimed by the said Philip Naisor Broekaway or his representatives, which was paid into Court to abide its future order. The other grandchildren of the testator applying to have that share divided amongst them, according to the limitation over of the will, public advertisement was directed to be made, for the purpose of giving notice to the said Broekaway or his legal representatives. This has been done, and the application is now renewed to distribute the fund among the other grandchildren. Their right to it, depends on the question, whether Philip Naisor Broekaway shall be presumed to have died before he attained tire age of twenty-one, as the limitation over to them was on that event. If he attained twenty-one, the legacy vested absolutely in him, and would go *450 to his legal representatives. There was some discrepancy in the testimony as to the dates of his birth and death, which I do not think necessary to decide upon, as I am clear on the principle of law. If he left Charleston in 1814, and was, at that time, fourteen years of age, (and I incline to think the testimony preponderates in favor of this state of facts) he would have attained the age of twenty-one a little before the seven years since his being last heard of, had elapsed; which time was necessary to raise the presumption of his death. There is no doubt, that the presumption of his death has long since arisen, and the question is, whether it is to be taken to relate to the time of his being last heard of, or to the end of the seven years, the lapse of which, was necessary to raise the presumption. But a single authority was produced, having any direct relation to the question; the case of Webster vs. Birchmore, 13 Ves. 363. That case depended on the question, whether John Herfill should be presumed to have died in the lifetime of Susannah Herfill. John Herfill had not been heard of for twenty-three years — but, of that period, not more than between five and six years had elapsed at the death of Susannah Herfill. It was argued that, though five or six years is not enough to raise the presumption of death, yet, when a sufficient time has elapsed, the relation mustgo to the first moment of the uncertainty of his existence. Lord Eldon determined, that he must be taken to have died -in the lifetime of Susannah. It is true, that he lays stress on the ciicum-stances that, athis departure, he expected to return in sixmonths, and that he was then in a bad state of health. But, I think there are strong grounds for supposing, that the general principle is, as contended for in the argument of the case. When a person leaves his home and family, and goes abroad, the natural and general presumption is, that his family and friends will be, from time to time, advised of his situation and movements. If this be omitted for any unusual length of time, this naturally raises a suspicion, that it is owing to some casualty — it may be death, or to some minor casualty, as sickness, imprisonment or shipwreck. When the period of seven years has elapsed, how *451 ever, the law presumes that it was occasioned by death and not by any minor casualty. Not death at the end of the period ; but, that the ignorance of his existence during the whole period was the consequence of his death. This seems, naturally, .to have relation to the earliest period when his existence became uncertain. I do not say, that circumstances may not exist to occasion a modification of the rule ; but I am satisfied, the general rule must be as I have supposed. I do not perceive such circumstances in this case. I am, therefore, of opinion, that Philip Naisor Brockaway must be taken to have died under the age of twenty-one years, and that the limitation over of his share of his grandfather’s residuary estate must have effect — or, rather that he died under the age of eighteen years, and that the fund goes, by the direct bequest, to such of the testator’s grandchildren as were living when the youngest attained the age of eighteen years. I do not know that this will make any difference in the rights of the claimants. It is ordered and decreed, that the fund be distributed accordingly.
Mem. — After this decree, and after the distribution, Philip Naisor Brockaway, as I have been informed, made his appearance in Charleston, in good health. W. H.